Opinion issued May 6, 2010.

 



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00288-CR

———————————

Ramon Ruiz Sanchez, Appellant

V.

The State of Texas, Appellee



 



 

On Appeal from the 351st District Court

Harris County, Texas



Trial Court Case No. 1115760

 



MEMORANDUM OPINION

Appellant,
Ramon Ruiz Sanchez, was indicted for the felony offense of possession, with
intent to deliver, a controlled substance, namely cocaine, weighing more than 4
grams and less than 200 grams, enhanced for punishment with two prior felony
convictions.[1]  Appellant pleaded “not guilty” to the
indictment and “not true” to the punishment enhancements.  The jury found appellant guilty of
possession, but not intent to distribute, and the Court found the two punishment
allegations true and sentenced appellant to 35 years’ confinement.

On appeal, appellant complains the
trial judge erred by telling the venire panel that the grand jury found that
appellant “probably” committed the crime charged in the indictment; that the
trial court erred by refusing to grant appellant’s motion to disclose the
identity of a confidential informant; and that the trial court erred by
admitting evidence obtained from an invalid search.  We affirm.

BACKGROUND

          On the evening of May 6,
2007, Pasadena police received information that a Hispanic male was selling
narcotics inside Colors, a bar in Pasadena. 
Testimony at trial differed as to whether the information was received
from an anonymous tip or a confidential informant.  One officer, Detective Raymond Garivey,
testified that he received a telephone call regarding the sale of narcotics in
Colors.  Because he was off-duty, Garivey
immediately relayed the information to dispatch for further action.  Garivey stated that the informant described
the person selling the narcotics “from head to toe” and that he was sitting in
a particular booth in Colors.  Garivey
stated that he knew the informant, had used the informant previously, and that
the informant was a paid confidential informant with a criminal history of
public intoxication convictions.  Officer
Garivey testified that the informant called the police from a pay telephone
about a mile and a half from the bar in which the narcotics were being sold.  The informant described the person selling
the narcotics, including his clothes, cowboy hat, and his exact location inside
the bar.  Garivey first testified that
the informant was inside the bar at some point, but he later clarified that the
informant had not been in the bar on the evening the call was made.  

Pasadena Police Officer Benjamin
Hickman testified he received information from police dispatch that an
anonymous tip stated a Hispanic male was selling narcotics inside Colors, and
that dispatch conveyed a description of the man and the clothing he was said to
be wearing, and that he was sitting on the south side of the bar.  Officer Hickman, accompanied by a canine
unit, went to the bar and found appellant inside, wearing the clothing the
informant described and sitting with his girlfriend on the south side of the
bar.  Officer Hickman testified that he
entered the bar in full uniform, and that appellant did not do anything out of
the ordinary while Hickman and the other officers approached him.  In the presence of the other officers, Hickman
informed appellant that he was a police officer and that he suspected appellant
was in possession of narcotics.  Officer
Hickman asked appellant to step outside of the bar.  According to Officer Hickman, appellant
agreed to step outside and gave his name when requested, although the I.D. he
had on him was invalid.  

Other officers performed an initial
search of appellant while Hickman was still inside the bar.  Hickman asked appellant whether he would
agree to another search of his person and appellant consented to another
search.  While performing the search,
Officer Hickman noticed a pack of cigarettes in appellant’s shirt pocket and
asked for permission to search inside the pack. 
Appellant agreed to the search of the pack, and Officer Hickman found
cocaine inside, separated into 25 small individual packages.  

At trial, Officer Hickman conceded
that he did not obtain a search warrant or an arrest warrant prior to
investigating the anonymous tip, and that he likely would not have been able to
do so before the bar closed.  Hickman
also stated that the officers did not conduct surveillance prior to approaching
appellant.  On cross-examination, Hickman
specifically stated that he believed the information he received was from an
anonymous caller, and that he did not follow up on the veracity or reliability
of the caller.  Hickman stated that, in
light of the amount of detail in the tip conveyed by dispatch, he believed that
the caller must have been in the bar at some point that evening.  Hickman further stated that the canine search
of appellant’s car did not reveal any additional narcotics, although the dog
alerted on several spots. 

Officer Hickman stated he did not
read appellant his Miranda rights
prior to performing the search.  Officer
Hickman also testified that appellant appeared to understand Officer Hickman’s
statements and instructions in English, and that appellant responded in
English.  At the time of trial, Hickman
did not remember whether appellant’s English was “broken,” but he confirmed that
appellant was able to give officers enough information in English to fill out a
booking slip. 

During voir dire, the trial court
made several comments to the venire panel, explaining the general process of
trial and the decisions they might be faced with as jurors.  He included a discussion of the grand jury
indictment and the burden of probable cause:

Rule
No. 1, the defendant in every criminal case has been indicted and the
indictment is not evidence.  He’s been
indicted.  Get over it.  Okay? 
And don’t fall into the trap of, well, he’s been indicted, he must have
done something. 

 

Look,
let’s try this.  If you haven’t been
indicted, you can’t go to trial.  Every
single person that goes to trial has been indicted.  The indictment is an accusation.  Whether it’s true or not, we will find out
based on the evidence, but the fact that he’s been indicted proves
nothing.  It doesn’t prove anything
because it’s not proof.

 

What’s
proof?  Testimony, physical evidence,
expert testimony.  All that comes from
the witness stand, none of which happened at the Grand Jury.  Ninety-nine percent of the time, including
this case, the only information the Grand Jury has is what the prosecutor tells
them.  Of course, what does the
prosecutor know?  What’s in the police
report because they weren’t there when whatever happened happened.  So, they read their report.  Ladies and gentlemen of the Grand Jury, based
on the report, thus and so happened on thus and so day.

 

          The Grand Jury, 12 people just like you and me, but they
have a completely different job.  Their
job is to decide probable cause.  Did a
crime probably happen?  Is the person
charged probably the one who did it?  Why
the big probably?  Because they don’t get
to see the witnesses in person.  They
don’t get to look at the physical evidence. 
They don’t get to hear from experts, but it’s not necessary because they
are not deciding is he guilty.  They’re
deciding is there enough to go to court?

 

Probable
cause.  It’s the lowest level of proof
upon which anything happens in the criminal justice system. 

 

.
. . . 

 

But
probable cause gets you to court.  It
doesn’t decide anything because it’s not evidence.  I might add, the Grand Jury’s job is done by
12 people who do not have to make a unanimous decision.  In the Grand Jury, you only need 9 of the 12
people to agree that there’s probably cause to be indicted.  

 

Elsewhere, the trial court judge compared the
indictment to a traffic ticket and stated that, like a traffic ticket, the
indictment was merely an accusation and without supporting evidence was
“worthless.”

As testimony from the police
officers was introduced, appellant’s counsel repeatedly objected to their
testimony about the tip they had received, arguing that the tip was
impermissible hearsay and that it violated appellant’s right to
confrontation.  Those objections were
overruled by the trial court.  Appellant
previously filed a motion to disclose the informant’s identity.  While the police officers testified,
appellant also made a verbal motion to disclose the identity of the
confidential informant.  The trial court
denied the motion to disclose the informant’s identity. 

ANALYSIS

On appeal, appellant complains that
the trial judge erred by: (1) telling the venire panel that the grand jury
found that appellant “probably” committed the crime charged in the indictment;
(2) refusing to grant appellant’s motion to disclose the identity of a
confidential informant; and (3) admitting evidence obtained from a search
conducted without appellant’s consent.  

A.  
Trial
Court’s Statements

 

Appellant first complains that the trial court erred by
informing the panel that the grand jury had considered the questions of “Did a
crime probably happen?” and  “Is the
person charged probably the one who did it?”.

Rule 33.1 of the Texas Rules of
Appellate Procedure requires that, in general, for a complaining party to
preserve an alleged error for appellate review, the record must show that the
party raised the issue with the trial court in a timely and specific request,
objection, or motion.  Tex. R. App. P. 33.1(a); Griggs v. State, 213 S.W.3d 923, 927
(Tex. Crim. App. 2007).  It is well
established that nearly every right may be waived when a party fails to
object.  See Saldano v. State, 70 S.W.3d 873, 887 (Tex. Crim. App.
2002).  Although he did not object to the
trial court’s statements during voir dire, appellant now argues that the
statements constitute fundamental error and that he was not required to object
to preserve this issue for appellate review. 


Appellant cites Blue v. State, 41 S.W.3d 129 (Tex. Crim.
App. 2000) (plurality op.), for the proposition that a defendant need not
always object to voir dire statements to preserve error.  In Blue,
the trial court apologized to potential jurors for a long delay, explained that
the delay was caused by the defendant’s inability to decide whether to accept a
plea bargain, and expressed its preference that the defendant enter a plea of
guilty.  Id. at 130.  On appeal, a
plurality of the Court of Criminal Appeals held the trial court’s statements
were fundamental constitutional error because, in certain circumstances, a
judge’s voir dire statements could “taint[] appellant’s presumption of
innocence in front of the venire, [become] fundamental error of constitutional
dimension and require[] no objection.”  Id. at 132.  

As a plurality opinion, Blue is not binding precedent.  See
Jasper v. State, 61 S.W.3d 413, 421 (Tex. Crim. App. 2001); McLean v. State, --- S.W.3d ----, 2010
WL 335611 (Tex. App.—Houston [1
Dist.], Jan. 28, 2010); Ganther v. State,
187 S.W.3d 641, 650 (Tex. App.–Houston [14th Dist.] 2006, pet. ref’d).  Further, Blue
is distinguishable from these facts, because the trial judge’s statements in
this case were not so serious as to taint the presumption of innocence and
obviate appellant’s need to object.  

The comments to which appellant
objects were part of a longer discourse on the role of a grand jury and the
distinction between the burdens of probable cause and reasonable doubt.  Contrary to appellant’s argument on appeal,
the trial court repeatedly emphasized that the grand jury’s indictment of the
appellant was not evidence and should not be considered at trial.  The trial court emphasized that the grand
jury did not hear much, if any, of the evidence the jury would hear during
appellant’s trial and even cautioned that an indictment alone was
“worthless.”  Further, the trial court
cautioned the panel members that the grand jury employs a lower standard of
proof—probable cause.  We do not find the comments of which
appellant complains, placed in their proper context, to be fundamental
error.  See Jasper, 61 S.W.3d at
421 (holding that, even under the reasoning of the Blue plurality, the trial judge’s comments would not rise to the
level of fundamental error); Ganther,
187 S.W.3d at 650–51 (concluding that, even if court of appeals were bound by
the Blue plurality, the trial judge’s
comments during voir dire did not rise to the level of tainting the presumption
of innocence or vitiating the impartiality of the jury).  Accordingly, appellant was required to object
to these comments at trial and his failure to do so waives this issue on
appeal.  

B.  
Motion to
Disclose Identity of Confidential Informant

 

Appellant argues in his second issue
that the trial court erred in refusing to require the State to disclose the
identity of its confidential informant. 
Appellant bases his argument on Rovairo
v. U.S., 353 U.S. 53, 60–61, 77 S. Ct. 623, 628 (1957), which held that an
informant’s identity must be disclosed if they participated in the offense,
were present at the time of the offense or arrest, or were otherwise shown to
be a material witness to the transaction. 


In Anderson v. State, the Court of Criminal Appeals noted the common
law standard formerly followed in Texas was based on Roviaro but that it had been supplanted by Rule 508 of the Texas
Rules of Evidence, and that the circumstances under which disclosure of an
informant’s identity is required under Rule 508 are broader than under Rovairo. 
817 S.W.2d 69, 71–72 (Tex. Crim. App. 1991) (citing Bodin v. State, 807 S.W.2d 313, 317 (Tex. Crim. App. 1991)).  Accordingly, we turn to Rule 508 to determine
whether the trial court erred by denying the motion to disclose the identity of
the informant. 

The State has the “privilege to
refuse to disclose the identity of a person who has furnished information
relating to or assisting in a criminal investigation.”  Tex.
R. Evid. 508(a).  Among other
exceptions, the confidential informant’s identity must be disclosed if the
informant’s testimony is necessary to fairly determine the accused’s guilt or
innocence.  See Tex. R. Evid.
508(c)(2).  The accused bears the burden
to establish a plausible showing that the confidential informant’s testimony is
necessary for a fair determination of guilt or innocence.  See
Bodin, 807 S.W.2d at  318; Long v. State, 137 S.W.3d 726, 732 (Tex.
App.—Waco 2004, pet. ref’d).  The accused
must show the informant’s testimony would significantly aid the jury in
determining the guilt or innocence.  Id. 
He must show the informant “participated in the offense, was present at
the time of the offense or arrest, or was a material witness to the
transaction.”  Lary v. State, 15 S.W.3d 581, 584 (Tex. App.—Amarillo 2000, pet.
ref’d).  When, however, the informant’s
information is used only to establish probable cause and the informant was not
a participant in the offense for which the defendant is charged, the identity
of the informant need not be disclosed because his testimony is not essential
to a fair determination of guilt.  See Washington v. State, 902 S.W.2d 649,
656–57 (Tex. App.—Houston [14th Dist.] 1995, pet. ref’d).

If the accused meets this burden,
the trial court must then conduct a hearing outside the presence of the jury to
allow the State to rebut the accused’s plausible showing.  Bodin,
807 S.W.2d at 318–19; Long, 137
S.W.3d at 732 (citing Bailey v. State,
804 S.W.2d 226, 230 (Tex. App.—Amarillo, no pet.)).  We review the trial court’s determination to
deny appellant’s motion for an abuse of discretion.  Sanchez
v. State, 98 S.W.3d 349, 356 (Tex. App.—Houston [1st Dist.] 2003, pet.
ref’d).

Appellant’s brief states that “the
informant played a material part in the criminal activity as he was intimately
knowledgeable of the appellant’s activity since he knew the appellant possessed
cocaine.”  Appellant also contends that
the informant “had to have been someone inside the bar.”  But Detective Garivey, to whom the informant
spoke, testified at trial that the informant was not inside the bar that
evening, and that the telephone call through which he received the information
was placed from a mile and a half away from the bar.  Further, appellant consented to a search of
his person when requested by police, and then the officers found cocaine in his
possession.  In other words, the evidence
upon which appellant’s conviction is based was gained from a search of his
person and not from the testimony or presence of an informant at the
scene.  Under these circumstances, the
informant’s testimony related only to the officer’s formation of whether
probable cause may have existed during their investigation.  The evidence does not establish that the
informant’s testimony would have significantly aided the jury in determining
appellant’s guilt or innocence.  Bodin, 807 S.W.2d at 318.[2]  We overrule appellant’s second issue and next
turn to review the search of his person prior to his arrest. 

C.  
Admission
of Evidence Found During Search

 

Appellant’s third issue challenges
the voluntariness of the search performed by Officer Hickman.  Appellant argues that he was essentially
coerced into consenting to the search, thus rendering it constitutionally invalid
and rendering the evidence found during the search inadmissible.  Appellant filed two motions to suppress and a
brief in support of those motions, but the record on appeal does not contain a
record of a hearing on the merits of those motions, nor does it contain any
order resolving the motions to suppress. 
Further, the reporter’s record does not reflect that appellant objected
to testimony regarding the evidence gained from the search during trial.  The objections appellant made, and the motion
he secured a ruling upon, related to his motion to compel disclosure of the
confidential information and his objection to admission of evidence relating to
the information he or she conveyed. 

Under the Fourth and Fourteenth
Amendments to the Unites States Constitution, a search conducted without a warrant
issued upon probable cause is per se unreasonable limited to a few
well-delineated exceptions.  U.S. Const.
amend. IV, XIV; Schneckloth v. Bustamonte,
412 U.S. 218, 219, 93 S. Ct. 2041, 2043 (1973). 
A search pursuant to voluntary consent is an exception to the
requirement that a search be based upon a warrant supported by probable
cause.  Reasor v. State, 12 S.W.3d 813, 817 (Tex. Crim. App. 2000).  For consent to be valid, however, it must be
voluntary.  Id. at 817–18.

At a suppression hearing, the trial
court is the sole and exclusive trier of fact and judge of the credibility of
the witnesses and their testimony.  Maxwell v. State, 73 S.W.3d 278, 281
(Tex. Crim. App. 2002).  The validity of
an alleged consent to search is a question of fact to be determined from the
totality of the circumstances. Id.  The federal constitution requires the State
to prove the voluntariness of the consent by a preponderance of the evidence,
while the Texas Constitution requires the State to show by clear and convincing
evidence that the consent was freely and voluntarily given.  Id.  The appropriate standard for reviewing a
trial court’s ruling on a motion to suppress is bifurcated, giving almost total
deference to a trial court’s determination of historical facts and reviewing de
novo the court’s application of the law. 
Id.; Guzman v. State, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997).

Among the factors to be considered
in determining voluntariness are whether the consenting person is in custody,
whether he or she was arrested at gunpoint, and whether the person was informed
that he or she did not have to consent.  Carmouche v. State, 10 S.W.3d 323, 331
(Tex. Crim. App. 2000).  Other factors
include the youth of the accused, the education of the accused, the
intelligence of the accused, the constitutional advice given to the accused,
the length of the detention, the repetitiveness of the questioning, and the use
of physical punishment.  Reasor, 12 S.W.3d at 818.

When the record is silent on the reasons for the trial court’s ruling, or
when there are no explicit fact findings and neither party timely requested
findings and conclusions from the trial court, we imply the necessary fact
findings that would support the trial court’s ruling if the evidence, viewed in
the light most favorable to the trial court’s ruling, supports those
findings.  State v. Garcia-Cantu, 253 S.W.3d 236, 241 (Tex. Crim. App. 2008). 

As a prerequisite to review on
appeal, Texas Rule of Appellate Procedure 33.1(a) requires appellant to show
that he presented his motion to suppress the evidence gained from the search of
his person to the trial court by a timely objection or motion that stated the
grounds for suppression with sufficient specificity and that the trial court
ruled on that objection or motion or refused to rule and appellant objected to
the refusal.  Tex. R. App. P. 33.1(a). 
Here, the appellate record lacks a ruling on appellant’s motions to
suppress and appellant did not object to the admission of the evidence during
trial.  Accordingly, appellant has failed
to preserve this issue for our review.  See, e.g., Coleman v. State, 113 S.W.3d 496, 499 (Tex. App.—Houston [1st
Dist.] 2003), affirmed on other grounds,
145 S.W.3d 649 (Tex. Crim. App. 2004) (mere filing of a motion to suppress,
without obtaining ruling on motion, did not preserve issue for appeal where no
objection was made to admission of evidence at trial).  

We note that, in Montanez v. State, the Texas Court of
Criminal Appeals held that the suppression issue was not waived even though the
record in that case lacked a ruling on the suppression motion, because the
trial court’s certification of the appellant’s right to appeal a pre-trial
ruling “unquestionably indicated” that the trial court had denied the motion to
suppress, and the docket sheet in the record showed that the court had
considered the suppression issue.  195
S.W.3d 101, 105 (Tex. Crim. App. 2006). 
In this case, unlike in Montanez,
the record does not “unquestionably” reflect that the trial court specifically
denied appellant’s motion to suppress the evidence gained from the search of
his person—instead, the record reflects
only that the trial court heard and ruled upon the motion regarding the
confidential informant and whether the testimony regarding that informant
should be excluded, and an ambiguous discussion regarding a “motion to suppress”
that may actually have been the motion regarding the confidential
informant.  

Even if appellant had preserved
this issue under Montanez, and we
presumed that the trial court heard and denied the motion to suppress,
appellant has failed to present a record of the suppression hearing for our
review.  Appellant has therefore waived
the issue of whether the facts elicited at the suppression hearing supported
the trial court’s implied denial of the motion to suppress the evidence seized
from the search.  We overrule appellant’s
third issue. 




 

Conclusion

We overrule each of appellant’s issues on appeal and affirm the judgment
of the trial court. 

 

 

 

 

                                                                   George
C. Hanks

                                                                   Justice


 

Panel
consists of Justices Jennings, Hanks, and Bland.

 

Do
not publish.  Tex. R. App. P. 47.2(b).

 

 











[1]           See Tex.
Health & Safety Code Ann. § 481.112 (Vernon Supp. 2009).





[2]         Appellant also argues that he should have had
the opportunity to cross-examine the informant on his or her criminal history,
presumably so that his or her veracity might be questioned.  Even assuming such a line of questioning
would have been proper, we note that appellant’s counsel elicited testimony from
Detective Garivey about the informant’s criminal history, and that the jury
heard evidence that the informant had been convicted of public intoxication.